FILED UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
06 JAN 12 AM 10: 26

M. L. ... CLK
U.S. BANKRUPTCY COURT
W.D. OF WA AT TACOMA

BY_____ DEP. CLK.

In re:
KOBLAK, FRANCIS D. and KATHRYN A.,

Debtors.

No. 05-43012 (Ch 7)

PAM LIESKE,

Plaintiff

Adversary No. A05-4138

v.

KOBLAK, FRANCIS D. and KATHRYN A.,

Defendants

Trial Brief

I, Pam Lieske, the Plaintiff am here to seek judgment against the Defendants for nondisclosure on the Residential Property Form of known problems with backyard and basement flooding of the property I purchased from them, located at 4925 Parkway Drive, Garfield Heights, Ohio 44125. I am seeking relief for damages to the basement; damage to personal property; cost of installing drain tile in the backyard; costs of installing sump pump and of repairing and replacing sanitary and storm and systems to the front of the house; costs of sanitary and storm repairs yet to be done on the north side of the house; labor and material related to flood cleanup, re-landscaping, trial preparation and appearance, copying and mailing; and attorney and court costs. *The total amount of damages I am seeking is $24,747.00*

1

On or about May 16, 2002, I made an offer, and subsequently purchased from the Defendants, the real property located at 4925 Parkway Drive, Garfield Hts, OH 44125. Prior to the purchase, I was provided with a Residential Property Disclosure Form executed by the Defendant, Francis Koblak on January 3, 2002 (See **P 1**). On it, the Defendant indicated no problems with the current sewer system (item B), the basement once had a water problem but it was corrected (item D), and that no current flooding, draining or grading problems existed on the property itself (item I). I relied heavily on this Disclosure Form and my home inspection report when making my decision to buy this property.

Since the first rain storm after purchasing my house, I knew the house had drainage problems: water would accumulate in my backyard, already existing sanitary smells from the garage drain would worsen, and seepage of water would occur around the basement floor's perimeter. None of this was disclosed on the Residential Property Disclosure Form that was supplied to me. In contrast, when the Koblaks purchased this property in 1993, the sellers did disclose two of these three problems (See **P 2**). They admitted to water accumulation in the backyard and seepage in the basement after heavy rains. Given the fact that the Koblaks made no significant repairs to the house's drainage systems during the time of their residence, one can only conclude that the truthfulness of the Koblak's Disclosure Form is suspect.

On May 10, 2003 and then again on July 6, 2003, my basement flooded heavily, with water literally pouring in through the walls like a river. In June 2003, before the second flood, I worked with a gentleman to put drain tile in my backyard in the hope that this would alleviate the

2

problem of standing water in my backyard after heavy rains and help to prevent future flooding. To some extent this worked: my backyard no longer accumulates standing water, but my basement flooding problem, as evidenced by the flood of July 6, 2003, persisted. The man who helped me to install drain tile chose not to write a statement documenting that we jointly did this work and that he saw standing water in my backyard, but notarized statements from my immediately surrounding neighbors ( **P 3, P 4, P 5**) attest to the fact that drain tile was installed. The statements from Terri Deininger (**P 4**) and the Stutzmans (**P5**) substantiate my claim that my backyard has had significant water accumulation problems for many years. Deininger explains that the Koblaks placed mounds of dirt near her driveway in an attempt to limit their backyard flooding, that they blamed her for their backyard water problems, and that the basement flooded repeatedly. The Stutzmans (**P 5**) corroborate Deininger's claims and add that the Koblaks asked them to install a special concrete lip on their driveway to help stem water flow into their yard. The *Point of Sale Inspection Report* (**P 6**) (dated 8/20/01) documents that the Koblaks had to level gravel piles, which probably sat near Deininger's driveway, prior to being allowed to sell the house to me. Finally, A *Mortgage Location Survey* (**P 7**) dated 10/30/93, with apparent later handwritten addendums by the Defendants, helps illustrate the exact nature of water problems in my backyard.

The Defendants will likely claim that my removal of the backyard above-ground pool is the primary reason that my basement has flooded, but as the above exhibits shows, the Koblaks themselves had repeated flooding and water problems, both in their basement and in their backyard. My removal of the aboveground pool did not worsen the situation. Moreover, one

3

installs drain tile to improve drainage, and statements from my neighbors, and an upcoming statement from my contractor, verifies that this work was done. One need only consider this fact, and examine these, and other exhibits I am providing, to realize that substantial backyard and basement flooding and drainage problems have existed for years, even decades, on my property. The Koblaks knew of these facts and either omitted or did not provide full disclosure of these problems on the Disclosure Form supplied to me.

Garfield Heights Service Records on my residence (**P 8**) show that city workers responded to 16 complaints of "Blocked Sewer" and 1 complaint of "Manhole Cover Damage," during the time the Koblaks lived at 4925 Parkway Drive. Yet, on their Disclosure Form (**P 1**), under the section "Sewer System," the Koblaks deny knowledge of "any current leaks, backups or other material problems with the sewer system servicing the property" and under the section "Basement/Crawl Space," they state that they "had problems with Water Back up – until they cleaned the Roots out of City Sewer two blocks (sic) haven't had a problem since." Sixteen service calls to the city for alleged problems with sewer backup constitutes a serious and ongoing problem that the Koblaks should have disclosed on the Disclosure Form. They should also have taken steps to discover and then remedy the complex drainage problems of this house. They did neither.

Exhibits **P 9 – P19** are photographs taken of my basement flooding. Most of them were taken during the second flood which I witnessed from its inception. You can see that foundation water comes in through the south and western basement walls and makes its way to the utility

4

room, located in the northeastern part of the basement. **P 16** shows clear water, like water from drinking fountains, entering the house through two holes in the southwest corner of a closet area. **P 18** and **P 19** are photographs of the basement's backflow, or flapper, valve and its cover. The function of this valve is to shut off backflow from the house's main drainage line. Exhibits **P 20 – P 32** are also photographs of my basement flooding. They are meant to illustrate the extensive labor involved in cleaning up after each of the two floods, as well as my loss of property (**P 31**). In addition, they illustrate the processional nature of each flood and how, when the foundation water enters an already overloaded system, there is a backup of material, some of it being dirt and some of being sewage. Put simply, both outside and inside of the house, the foundation water had nowhere to go. (I make this claim because future exhibits will show that not only does my house have combined sanitary and storm lines, but at the time of the floods, storm laterals and drain tile in the front of the house were clogged and improperly installed).

In *Interrogatories* ( **P 33**) the Koblaks state (question 7) they "never called [the] city for problems with [the] yard," but admit (question 8) they "added dirt to [back] yard and sloped it so water ran into drains." The only other "repairs[,] improvements, or changes to . . . [their] basement, backyard or sewer" they made was adding a "cover to drain" and when asked (question 13) to "describe any occasion where the backyard held free standing water while you lived there," they claim the "Backyard only held water prior to repairs [i.e. drain cover] indicated previously." This drain cover sits in the back yard, near the Deininger's driveway. The drain itself runs along the south side of my property; the drain tile I installed connects to it. It is unreasonable to think

5

that adding a simple drain cover is enough to correct the serious drainage problems of this house. In addition, the Koblak's admission of adding dirt to the backyard, having work done in the basement, and having had a "Water Back up" problem in their "Basement/Crawl Space" (**P 1**) all point to the primary cause of this house's repeated flooding problems: clogged, improperly installed, and combined sanitary and storm lines. Had the Koblaks diligently worked with city and county officials, and independent contractors, to uncover these problems, as I did, they would have discovered this. Instead, they either did not disclose or they misrepresented the house's drainage and flooding problems on the Disclosure Form and will likely blame all 16 incidents of basement flooding on roots clogging the city sewer.

After the first basement flood (May 10, 2003), I suspected something was seriously wrong with the house's drainage system, but being a first-time home owner and not knowing much about sanitary and storm systems, I thought installing drain tile would correct the problem. However, after the second basement flood (July 6, 2003), I knew my house's drainage problems were serious. In an effort to discover what exactly was wrong, I spoke with the Mayor, met with three independent contractors, worked with city officials, and met with the City Engineer, the latter of whom assured me that my storm and sanitary lines were separate. It wasn't until the Garfield Heights Service Department did a House Lateral Televised Inspection Report on July 31, 2003 (**P 34**) that I discovered what my chosen contractor suspected all along: that my storm and sanitary lines were combined. Exhibit **P 34** verifies that the basement's backflow valve works properly and corroborates what photographs of the flood show--that water comes in through basement walls during floods.

6

While helpful, this information did not provide a full picture of my house's drainage problems. Through a series of what I now recognize as fortuitous events, in late August 2003 the county first discovered and then repaired two clogged and improperly installed storm laterals coming from the front and southwest corner of the house. The county's report is exhibit **P 35.** Thankfully, the county did not charge me for this work. More importantly, their findings helped me to understand that water from the backyard, which is funneled through a storm drain along the south side of the house, had nowhere to go. The job of these storm laterals was to take water to the storm system in the street, but because they were clogged and improperly installed, water just pooled and accumulated around the house, and contributed to the basement flooding. The county was not supposed to do this work—they were only supposed to work on my tree lawn, and only after much cajoling could I get the supervisor in charge to write a report. This report does not mention that county workers corrected the problems they discovered. A notarized statement from my contractor (**P 36**), however, verifies that the county did this work. It also succinctly summarizes the house's complex drainage problems. This contractor, Mike Behory, has examined my property at least five times and was present when both city and county workers worked on my property. In October of 2003, he and his workers continued repairs begun by the county. They "removed footer tile out of the sanitary line near the foundation, installed [a] new storm line from [the] left side of [the] house and connected it to [the] opening installed by the county," and installed a sump pump. A report of these repairs, which I paid for, is exhibit **P 37**. (Work on the north side of the house that still needs to be done will be mentioned later). It is Mr. Behory's professional opinion that my house's drainage problems (standing water in backyard,

7

basement flooding, sewer back-up) "are long-standing and have occurred over many years, even decades." He has told me in private that he thinks the house's drainage system was improperly installed from the time the house was built. With 32 total recorded service complaints related to flooding of this house (**P 8**), it is hard to dispute this claim.

In the summer of 2003, I contacted a lawyer about initiating proceedings against the Koblaks, and once I was able to determine, and partially correct, the house's drainage problems, the case went forward. Exhibit **P 38** are documents related to this civil case. I include them here to not only demonstrate my persistence in trying to rectify the injustice I believe the Koblaks inflicted on me, but to show the curious timing of the Koblak's bankruptcy. Mike Behory's statement (**P 37**) was sent to the Koblak's lawyer on March 1, 2005. On April 5, 2005, the Koblak's filed for bankruptcy. The timing of these events is highly suggestive.

Exhibit **P 39** is a photograph of my front lawn after the county completed its work and before Berea Contractors began their work. Exhibits **P 40 – P 53** show improperly placed and cracked drain tile from the front of the house that Berea Contractors removed, the scope and extent of the repairs completed, and the relationship of this work to work done by the county, as well as work still to be done. (Handwritten notes on orange paper attached to original pictures are Mike Behory's handwritten notations. They have been transcribed on subsequent copies to identify the pictures). Together, these photographs illustrate the last pieces of the puzzle of my house's troubled drainage system—drainage tile along the perimeter of the house was cracked and installed too high, and sanitary and storm lines ran together. Though repairs on the house's north

8

side are still pending, there is no doubt that combined sanitary and storm lines continue there as well. The last three photographs (**P 54 – 56**) show the appearance of a front flower bed after Berea Contractors finished their work and some subsequent landscaping that I did. When seen with previous photographs that show how my front yard was torn up so repair work could be completed, they are meant to provide an idea of the scope of the re-landscaping that I did.

I believe I have shown that the Koblaks were negligent in not disclosing on the Residential Property Disclosure Form that the property I purchased from them had documented serious, longstanding problems with water accumulation in the backyard and frequent basement flooding. The exhibits I have provided prove that the Koblaks knew of these problems, did nothing substantive to correct them, and were criminally negligent in either omitting or misrepresenting these defects on the Residential Property Disclosure Form. What I am seeking from the court is outlined in the first paragraph of this brief. That said, I can't begin to tell you what hardships I have endured. For six months, from May 2003 until Berea Contractors did repairs on the front of the house in October 2003, I did not know the exact nature of my house's drainage problems and seriously considered moving and selling the house at a loss. In the beginning, city and county officials were reluctant to help, and the city engineer refused to believe that my house could have combined sanitary and storm lines. It wasn't until a letter that I wrote, which was critical of the city, was published in the local newspaper that the Mayor stepped in to provide me with crucial assistance. He arranged for dye testing and televised reports to be done on my house's drainage

system, and he arranged for the county to perform tests on my tree lawn, which fortunately, as discussed, led to the discovery and repair of clogged and improperly installed storm laterals on my property. Exhibit **P 57** outlines my estimated losses and expenses, and includes a deduction for the insurance settlement I received after the second flood. I have paid $5900 for repairs completed, nearly $2800 in lawyer fees, a notarized estimate of $4900 from Berea Contractors for work still to fees, and another estimate of $6809 for basement repairs. I have lost hundreds of dollars in personal property, have paid hundreds more to re-landscape both the front and backyards, and because I could no longer afford an attorney, have spent countless hours and substantial money preparing for, and appearing at, this trial. In addition, because of my flooding problems, in May 2003 my homeowner's insurance company refused to reinstate my policy. As a result, I was forced to accept coverage with the only insurance company in the state of Ohio that would accept me—Ohio Fair Plan—and now pay significantly more money for substantially less coverage. Subsequent exhibits provide documentation of these expenses, losses, estimated repair work, and damage to my basement. Certainly I would like full compensation of the $24,747.00 that I am seeking, as well as any additional funds that the court deems fit. What I want most of all, though, is for a court of law to rule that the Koblak's conduct toward me was not only unjust and unfair, but it was criminally negligent.

Respectfully,

*Pam Lieske*

Pam Lieske
January 11, 2006