PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
\_\_\_\_LODGED
\_\_\_\_RECEIVED

**February 15, 2006**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>FRANCIS D. KOBLAK and KATHRYN A. KOBLAK,<br><br>        Debtors. | Case No. 05-43012 |
| PAM LIESKE,<br><br>        Plaintiff,<br><br>  v.<br><br>FRANCIS D. KOBLAK and KATHRYN A. KOBLAK,<br><br>        Defendants. | Adversary No. 05-4138<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

Trial was held in this matter on January 25, 2006. Pam Lieske (Plaintiff), in accordance with her complaint, seeks to have the debt owed to her by Francis D. and Kathryn A. Koblak (Debtors) declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Based on the evidence, pleadings and arguments presented, the Court's findings of fact and conclusions of law are as follows:

MEMORANDUM DECISION - 1

# FINDINGS OF FACT

On May 18, 2002, the Debtors accepted the Plaintiff's offer to purchase their home located at 4925 Parkway Drive, Garfield Heights, Ohio (Residence). The Residence was 52 years old at the time of purchase. The State of Ohio Department of Commerce Residential Property Disclosure Form (Disclosure Form) completed and signed by the Debtors includes a representation by the Debtors that they did not know "of any current leaks, backups or other material problems with the sewer system servicing the property." The Debtors also represented in the Disclosure Form that they did not "know of any current water leakage, water accumulation, excess dampness or other defects with the basement/crawl space." In response to the inquiry regarding repairs, alterations or modifications to the property or other attempts to control any water or dampness problems in the basement or crawl space within the past five years, the Debtors disclosed, "[w]e had problems with water back up until they cleaned the roots out of the City Sewer two blocks[;] haven't had a problem since." The Debtors further represented that they did not "know of any current flooding, drainage, settling or grading problems affecting the property." Although the Plaintiff had her own inspection of the home performed, she relied heavily on the Disclosure Form when purchasing the Residence.

The Debtors owned the Residence from 1993 until 2002. In the prior Disclosure Form completed in 1993, the previous owners disclosed multiple drainage/flooding problems with the Residence, including "spring sewer backed up – City cleaned sewer and has not backed up since (cleaned street sewer)." Additionally, the previous owners stated that they would get a small amount of seepage in rear of their home and water accumulated in their back yard during heavy rains.

Mrs. Koblak testified that during the time that the Debtors owned the Residence, they experienced substantial flooding three to four times. During at least one flood, there was sewage in the water. Additionally, seepage occurred through the back basement wall, that ultimately required sealer to be applied. Mrs. Koblak stated that to help prevent standing water in the backyard and to control the flooding, in approximately 1995, the Debtors landscaped their backyard. The landscaping included the installation of two raised flower beds and two trenches to redirect water from the neighbors' yards to a drain located in the Debtors' backyard. In addition, the Debtors installed a drain cover to prevent leaves from accumulating and blocking the drain. Mrs. Koblak also acknowledged that the Debtors contacted the City of Garfield Heights Service Department to clear roots from the sewer line leading to their property. Mrs. Koblak testified that after this work was performed, the Debtors had no further standing water. The Debtors also made cosmetic changes to the basement, including replacing paneling, wallpaper, molding, and tile.

Although Mrs. Koblak was unsure of many dates, she testified unambiguously that the last flood in the Residence occurred approximately two to three years prior to selling the Residence to the Plaintiff. Mrs. Koblak also admitted that during the nine years that the Debtors owned the Residence, they contacted the City of Garfield Heights Service Department 17 times to remind them to check that the sewer lines running toward the Residence were clear and that water was flowing properly. She testified that as long as the roots were removed from the drains, the Debtors did not have flooding problems.

The Debtors' answers to interrogatories in a prior state court proceeding admitted that they had previously complained about water or sewer problems in their basement or backyard to the mayor, sewer department, neighbors, and family. The Debtors answered that they

MEMORANDUM DECISION - 3

never informed the Plaintiff about any water problem in the backyard because they believed the problem had been remedied.

The Plaintiff testified that since purchasing the Residence, she has noticed an unsanitary smell, seepage in the basement, and water accumulations in the backyard whenever it rains. She stated that she has had two massive floods in the Residence occurring on May 10, 2003, and July 6, 2003. During the floods, water, sewage, and dirt poured into the basement, resulting in water accumulations of up to four inches. The Plaintiff declared that the damage to the basement was extensive, and that it took 12 hours to clean up after each flood. The Plaintiff's testimony and photographs document damage to the basement, including lost personal property, mold on the walls and door posts, and damaged floor tile and wall covering. The Plaintiff's testimony is found to be credible.

After the second flood, the Plaintiff spoke with the Garfield Heights Mayor, Engineer and other officials, as well as her own contractors in order to determine the cause of the water problem. The Plaintiff was advised that the Residence's storm and sanitary lines were improperly combined. In August, 2003, the City of Garfield Heights Building Department discovered and also repaired two clogged and improperly installed storm laterals. In October, 2003, Berea Contractors removed footer tile from the sanitary line, installed a new storm line and connected it to the opening installed by the county, and installed a sump pump.

The Plaintiff alleges estimated losses and expenses of $27,813, less $3,066 from an insurance settlement, for a total of $24,747.

## CONCLUSIONS OF LAW AND DISCUSSION

To establish nondischargeability under 11 U.S.C. § 523(a)(2)(A), a creditor must demonstrate by a preponderance of the evidence each of the following five elements:

MEMORANDUM DECISION - 4

> (1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor;
> (2) knowledge of the falsity or deceptiveness of his or her statement or conduct;
> (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000) (citing American Express Travel Related Servs.Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir. 1996), as amended (1997); Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1086 (9th Cir. 1996)). A creditor need only justifiably rely on representations by the Debtor. Field v. Mans, 516 U.S. 59, 74-75, 116 S. Ct. 437 (1995). A person is justified in relying on a representation of fact even though he may have ascertained the falsity had an investigation been made. Field, 516 U.S. at 70-71.

Applying the above elements to this case, the admissible evidence establishes that the Residence experienced at least some sewer, drainage, and water seepage and accumulation problems prior to the Debtors' purchase of the Residence in 1993. It is uncontroverted that these problems continued during at least the early years that the Debtors owned the Residence, during a flood occurring in 1999 or 2000, and after the Plaintiff purchased the Residence in 2002. The Court concludes, and the Debtors conceded during trial, that their statements or omissions contained in the Disclosure Form were representations for purposes of 11 U.S.C. § 523(a)(2)(A). The issue then is whether there were sufficient problems so that they should have been clearly detailed in the Disclosure Form.

Mrs. Koblak's trial testimony regarding the drainage and flooding problems was incomplete with respect to dates, and in some instances inconsistent. Mrs. Koblak testified that after the landscaping in the backyard was completed in 1995, and the roots from the sewer lines were cleared, the Residence no longer experienced water accumulation or

MEMORANDUM DECISION - 5

seepage problems. Yet she also testified that she had water problems in the more recent flood occurring two to three years prior to the sale of the Residence to the Plaintiff. This testimony indicates that the drainage and flooding problems were not resolved after the work performed in 1995.

Mrs. Koblak also admitted that the Debtors contacted the City of Garfield Heights Service Department 17 times to remind them to check that the sewer line running toward the Residence was clear. She testified that after the sewer line initially was cleared of roots, there was no more flooding because the Debtors had learned to check the lines. It is reasonable to infer that but for these constant reminders to that city service department, the sewer line would become clogged and result in additional flooding. The Debtors, however, did not disclose this information, even though the Disclosure Form, paragraph B, required the Debtors to disclose any "other material problems with the sewer system servicing the property."

Nor did the Debtors disclose that they had altered the landscaping in the backyard to prevent flooding. Based on the Debtors' experiences prior to the landscaping work performed in 1995, and their alleged experiences thereafter, it is reasonable to infer that landscaping and drain work was necessary to prevent standing water and flooding. The Disclosure Form, paragraph I, required the Debtors to disclose any alterations to the property or other attempts to control any flooding, drainage, settling or grading problems within the past five years. The Disclosure Form, paragraph L, required the disclosure of material defects. Mrs. Koblak's testimony establishes that it may have been a necessity to maintain the altered landscaping to control flooding and drainage problems. Yet the Debtors did not disclose this information.

MEMORANDUM DECISION - 6

Based on the foregoing, the Plaintiff has established by a preponderance of the evidence that the Debtors misrepresented or fraudulently omitted information concerning the ongoing sewer and landscaping maintenance that was necessary to prevent the return of historical flooding and drainage problems. The Debtors further misrepresented that there were no more flooding or seepage problems with the basement after the 1995 yard and sewer work, when in fact flooding occurred as late as two to three years previously.

The evidence relied on for the misrepresentation element also establishes that the Debtors were aware of the falsity or deceptiveness of their omissions and misrepresentations in the Disclosure Form. These problems would not necessarily be easily discovered by the Plaintiff's home inspector, unless there was a heavy rain at the time of the inspection.

With respect to the third element of 11 U.S.C. § 523(a)(2)(A), because intent is rarely established by direct evidence, "intent to deceive under § 523(a)(2)(A), can be inferred and established from the surrounding circumstances." <u>Alexander & Alexander of Washington, Inc. v. Hultquist (In re Hultquist)</u>, 101 B.R. 180, 183 (9th Cir. BAP 1989). In this case, based on the disclosures made to them in 1993, the Debtors were aware of the historical ongoing flooding and drainage problems with the Residence. The Debtors too experienced these problems first-hand, and as late as the flood two to three years prior to the sale of the Residence. While the Debtors allege that these problems were repaired and were no longer an issue, the Debtors acknowledged that the problems could reoccur if the sewer line was not kept clean, or if the landscaping was not maintained. The Debtors, however, chose not to disclose this information. Based on the totality of the circumstances, the Court concludes that the Plaintiff has established by a preponderance of the evidence the Debtors' intent to deceive by not specifically disclosing these problems.

Taking into consideration the element of whether the Plaintiff justifiably relied on the Disclosure Form, the Plaintiff testified that even though she financed her own inspection of the Residence, she relied heavily on the Disclosure Form. The Debtors try to establish the unreasonableness of this reliance by pointing to boilerplate language in the Disclosure Form that states that the form is not a warranty or a substitute for an independent inspection. The Debtors, however, acknowledged that statements made by them in the Disclosure Form were representations to the Plaintiff. In this instance, the Plaintiff obtained her own property inspection, but as the inspection was not performed during a period of heavy rain, the inspection failed to reveal drainage or flooding problems. Accordingly, it is reasonable for the Plaintiff to rely on the Disclosure Form, since its obvious purpose is to provide prospective buyers with information about a residence known only to a previous owner. The Plaintiff has established by a preponderance of the evidence that she justifiably relied on the Disclosure Form.

As for the final element, the Court concludes that the Plaintiff experienced recoverable damages consisting primarily of lost property and repair costs.

The Court is required to determine what, if any, damages were proximately caused by the Plaintiff's reliance on the Debtors' statements or conduct. The United States Supreme Court has found that the overriding purpose of 11 U.S.C. § 523 is to protect victims of fraud. Muegler v. Bening, 413 F.3d 980, 983 (9th Cir. 2005), cert. denied, 126 S.Ct. 1149 (2006) (citing Cohen v. de la Cruz, 523 U.S. 213, 222-23, 118 S. Ct. 1212 (1998)). Thus, the damages recoverable in a § 523(a)(2)(A) action encompass liability arising from the fraudulent conduct, including previously ordered attorney's fees, costs of the suit associated with establishing fraud, treble damages, and other relief established under state law. Cohen, 523

U.S. at 223. An award of attorney's fees, however, is permitted only if the successful plaintiff could recover them in non-bankruptcy court, in accordance with state law. <u>Bertola v. N. Wisconsin Produce Co. Inc. (In re Bertola)</u>, 317 B.R. 95, 99-100 (9th Cir. BAP 2004).

The Plaintiff has documented the losses she incurred as a result of the drainage and flooding problems. The Debtors presented no opposing evidence or argument as to what costs should be included or excluded. The Court concludes that the following damages were proximately caused by the undisclosed flooding and drainage problems, and are therefore nondischargeable:

| | |
|---|---|
| $5,900 | Work paid for and completed by Berea Contractors; |
| $192 | Loss related to new homeowner's insurance with reduced coverage for years 2004, 2005, 2006 ($64 x 3); |
| $500 | Deductible paid to Insurance Company for 7/6/03 flood; |
| $150 | Court fee to file adversary complaint letter; |
| $500 | Lost property from floods, including rugs, runner, dehumidifier, etc.; |
| $1,300 | Cleaning supplies, landscaping supplies, drain tile, new plantings, top soil, etc. |

**Total: $8,542**

The Plaintiff has not established that she is entitled to attorney's fees or any of her costs incident to the litigation under either federal or Ohio state law; thus, there is no basis to award these fees and costs. Nor has she has presented legal authority that she is entitled to damages based on evidence not admitted at trial, for example third party estimates of uncompleted repairs or future costs. Additionally, with respect to the request for reimbursement of her time spent cleaning up after the floods, installing the drain tile, and re-landscaping the Residence, the Plaintiff has not established that she accomplished these

tasks at the expense of earning her nursing wages of $10/hour. Thus, she has not established that these requested labor costs were "costs" to her.

Accordingly, the Plaintiff shall have a judgment against the Debtors in the total amount of $8,542, and this debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

DATED: February 15, 2006

*Paul B. Snyder*_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 10